Florence M. STANSEL and William A. Burleson, Appellants,

v.

AMERICAN SECURITY BANK, Appellee.

AMERICAN SECURITY BANK, Appellant,

v.

Florence M. STANSEL and William A. Burleson, Appellees.

Nos. 87–262, 87–263.

District of Columbia Court of Appeals.

Argued June 2, 1988.
Decided Sept. 23, 1988.

---

William A. Burleson, Washington, D.C., for appellants/cross-appellees Stansel and Burleson.

Dale A. Cooter, with whom Joseph M. Cahill and Donna S. Mangold, Washington, D.C., were on the brief, for appellee/cross-appellant American Sec. Bank.

Before TERRY, ROGERS and STEADMAN, Associate Judges.

TERRY, Associate Judge:

American Security Bank ("the Bank") brought this action against Florence Stansel and William Burleson, seeking to recover $20,000 on a promissory note, plus interest and attorney's fees. Stansel and Burleson denied the debt and filed counterclaims alleging fraud, breach of contract, and violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961–1968 (1982 & 1987 Supp.). The trial court granted directed verdicts for the Bank on the counterclaims, and the jury thereafter awarded the Bank $44,195.65, including interest, on its underlying claim on the promissory note. In two subsequent orders, the court granted the Bank $17,678.26 in attorney's fees but denied a motion by the Bank for monetary sanctions against appellees under Super.Ct.Civ.R. 11.

Stansel and Burleson appeal, arguing that the trial court erred in granting the directed verdicts, in receiving testimony during Burleson's absence from the courtroom, and in allowing itself to be improperly influenced by the Bank's counsel at trial. They also maintain that the award of attorney's fees was excessive. The Bank, in its cross-appeal, challenges the award of fees as inadequate and asserts that the trial court erred in denying its request for Rule 11 sanctions.

We reject all of Stansel and Burleson's claims of error and affirm the judgment on the verdict. With respect to the two post-trial orders which are the subject of the Bank's cross-appeal, we are unable to determine from the record either the adequacy of the fee award or the correctness of the court's denial of the Rule 11 motion. We therefore vacate the post-trial orders and remand the case to the trial court for further proceedings with respect to those two matters.

## I

The Bank filed this action against Stansel and Burleson in October 1980, seeking to recover on a promissory note for $20,000, with interest at the prime rate plus four percent (as specified in the note), plus attorney's fees. The note at issue, executed on March 12, 1979, represented the third renewal of another note executed a year earlier by Stansel, with Burleson as an accommodation signer, to obtain a $20,000 loan from the Bank for the down payment on a piece of real property. The note upon which the suit was based contained a provision allowing the Bank to recover from the makers "costs of collection, including a reasonable attorney's fee." From the time the original note was executed in March 1978 until the filing of the suit in October 1980, Stansel and Burleson had failed to repay any of the principal[1] and had ignored a succession of demand letters sent by the Bank.

Stansel and Burleson answered by denying the debt, claiming partial satisfaction, and alleging *inter alia* fraud, deceit, and illegality of the note. They also counterclaimed for breach of contract. After five years of litigation, the defendants added a new counterclaim under the RICO Act, alleging that the Bank had fraudulently charged them excessive interest rates and had engaged in an illegal kickback and tax fraud scheme which it attempted to cover up by forgery. Stansel and Burleson presented insufficient evidence at trial to support any of their counterclaims, and as to them the trial court granted directed verdicts for the Bank. The court, however, denied the Bank's motion for a directed verdict on its underlying claim on the note, allowing the jury to decide the meaning of "prime rate."

The jury returned a verdict against Stansel and Burleson in the amount of $44,195.65, the precise sum that the Bank had sought. After a post-trial hearing, the court, without explanation, awarded attorney's fees to the Bank in the amount of $17,678.26, exactly forty percent of the jury verdict and substantially less than the bank had requested. The Bank thereafter moved to amend the judgment under Super.Ct.Civ.R. 59(e) and for monetary sanctions under Super.Ct.Civ.R. 11, but the court denied both requests.

## II

Stansel and Burleson contend that the trial court erred in allowing three of Stansel's witnesses to testify in the absence of Burleson, who had been co-counsel for both himself and Stansel before trial. On the third day of trial, as Stansel was completing her case, Burleson was absent from the courtroom because of illness. Upon request, the trial court granted a short continuance for Burleson but ordered Stansel first to complete her own case by presenting her last three witnesses. Burleson now maintains that this ruling prejudiced him, since he was an important witness and counsel in the case and had a right to be present during the other witnesses' testimony. We disagree. Burle-

---

1. They alleged, however, that they had paid some of the interest, which the Bank disputed.

The jury, by its verdict, evidently agreed with the Bank.

son's presence was not so important or material at this particular point in the trial that his absence resulted in prejudice. *See, e.g., Etty v. Middleton,* 62 A.2d 371, 373 (D.C.1948); *Cornwell v. Cornwell,* 73 App. D.C. 233, 235–236, 118 F.2d 396, 398–399 (1941). The three witnesses who testified were part of Stansel's case, not Burleson's, and the trial court expressly allowed Burleson to recall one significant witness himself when he returned to trial and began his own case. Moreover, his request for a continuance was granted, and he eventually testified in support of his own claims against the Bank. Thus Burleson was not deprived of an opportunity to be heard or to present an effective defense to the Bank's claims against him. *See Feaster v. Feaster,* 359 A.2d 272, 273 (D.C.1976); *Bernard's Fur Shop, Inc. v. DeWitt,* 102 A.2d 462, 464 (D.C.1954); *Keister v. McDavid,* 76 A.2d 776, 778 (D.C.1950). Indeed, the trial court specifically allowed the witnesses' testimony to continue in Burleson's absence because it was worried about the detrimental effects of further delay on the jury's attitude toward Burleson. We find no reversible error.[2]

Stansel and Burleson also challenge the granting of directed verdicts on their counterclaims for breach of contract and violation of the RICO statute. As to their contract claim, they contend that they presented sufficient evidence to prove that the Bank breached an enforceable oral agreement, collateral to the underlying note, to provide additional loans to Stansel for renovation and permanent financing of the property she had purchased. They also assert that the note was not an integrated contract and so could be modified by additional financing conditions. As to their RICO claim, Stansel and Burleson maintain that they presented sufficient evidence to allow the jury to decide whether the Bank

engaged in interstate racketeering activities by planning an unlawful scheme of kickbacks from the renovation financing and by charging fraudulent and excessive interest rates on its loan. Reviewing the evidence in the light most favorable to the defendants, *see Vassiliades v. Garfinckel's, Brooks Brothers, Miller & Rhoades, Inc.,* 492 A.2d 580, 586 (D.C.1985), we affirm the directed verdicts.

■ Stansel and Burleson failed to adduce evidence sufficient to show that a separate oral agreement existed committing the Bank to provide funding for Stansel's renovation and permanent financing. They presented no proof that the Bank went beyond mere preliminary discussions and actually offered such funding. *See* RESTATEMENT (SECOND) OF CONTRACTS § 26 (1981). Neither defendant offered evidence of any specific terms of the alleged agreement, such as the exact amount of the loans, the interest rates, terms of payment, or manner of performance. Thus their claim of breach of contract fails for lack of certainty of the contract's terms. *See Craig v. Acacia Mutual Life Insurance Co.,* 88 A.2d 184, 185 (D.C.1952); *Maurice Electrical Supply Co. v. Anderson Safeway Guard Rail Corp.,* 632 F.Supp. 1082, 1087 (D.D.C.1986); RESTATEMENT, *supra,* § 33.[3]

■ The defendants also failed to make a *prima facie* showing under the RICO Act of either the alleged kickback scheme or the fraudulent interest scheme. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Klapper v. Commonwealth Realty Trust,* 657 F.Supp. 948, 953 (D.Del.1987); 18 U.S.C. §§ 1962(c), 1964(c). First, they did not establish that the Bank committed either of the federal crimes they alleged,

---

**2.** That Burleson was also co-counsel for both himself and Stansel before trial is of some significance, but does not require reversal absent demonstrable prejudice. *See Wynn v. Washington,* 53 A.2d 275, 276 (D.C.1947). There was no prejudice here because both appellants were represented during the testimony on contested issues, and because Burleson was allowed to

recall an important witness when he returned to help his counsel in impeachment.

**3.** We therefore need not decide whether the promissory note, which appeared on its face to be a complete and integrated contract, could be modified by a collateral agreement. *See* 4 WILLISTON, CONTRACTS § 644, at 1119–1120 (3d ed. 1961).

mail fraud[4] and wire fraud.[5] Their evidence consisted only of vague allegations and surmises, unsupported by specific proof that the Bank engaged in these activities or in any type of racketeering activity as defined in 18 U.S.C. § 1961(1). Furthermore, even assuming that their allegations were true, Stansel and Burleson made no showing whatever that the Bank's isolated actions constituted a pattern of racketeering. *See Sedima, supra,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285; *Tellis v. United States Fidelity & Guaranty Co.,* 826 F.2d 477, 478–479 (7th Cir.1987); *Torwest DBC, Inc. v. Dick,* 810 F.2d 925, 928–929 (10th Cir.1987). Finally, Stansel and Burleson presented no evidence that any allegedly improper conduct by a bank employee implicated the Bank. This was a critical omission. That an employee violates the statute does not necessarily mean that his or her employer does so as well, absent proof of the employee's authority and the involvement of the employer. *See United States v. Jannotti,* 729 F.2d 213, 226 (3d Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984); *Banque Worms v. Luis A. Duque Pena e Hijos, Ltda.,* 652 F.Supp. 770, 772–773 (S.D.N.Y. 1986). The trial court properly refused to send the RICO claims to the jury.[6]

■ Finally, Stansel and Burleson contend that the court was improperly influenced in its rulings by the Bank's trial counsel, citing five instances of the supposed improper influence. We find no merit whatever in this contention. At bottom it is nothing more than a complaint that the trial court made some rulings with which they did not agree. In each of the cited instances, either the court was fully justified in its ruling or Stansel and Burleson have failed to show that they were in any way prejudiced. Indeed, the record is full of instances in which the court made rulings favorable to them over the objections of the Bank. The only basis for the defendants' claim of undue influence is the fact that the court ruled against them on several occasions. This is not enough to sustain their claim.

## III

In its cross-appeal the Bank contends that the trial court erred in granting it a fee award that was manifestly inadequate in light of the actual cost of litigation. It notes that the court simply awarded a flat forty percent of the jury's verdict without considering any factors, such as the defendants' dilatory tactics, which complicated an otherwise simple collection case. The Bank also challenges the court's denial of Rule 11 sanctions for the same alleged harassment and bad-faith efforts by the defendants to delay the judicial process. Stansel and Burleson respond that the fee award was excessive because it was based on a judgment already augmented by a large amount of interest. They also assert that their counterclaims were presented in good faith and were documented to the extent to which discovery was allowed to them.

## A

■ Because the promissory note expressly provided for reasonable attorney's fees incurred as a cost of collection, a fee award to the Bank was entirely appropriate. *Sundown, Inc. v. Canal Square Associates,* 390 A.2d 421, 430 (D.C.1978); *F.W. Bolgiano & Co. v. Brown,* 333 A.2d 674, 675 (D.C.1975). From the record before us, however, we cannot tell how the trial court calculated the amount it granted to the Bank; consequently, we cannot determine whether the award was reasonable. Since it was exactly forty percent of the jury verdict, however, a fair question is raised whether the trial court determined the fee according to the required method,

---

4. 18 U.S.C. § 1341 (1982).

5. 18 U.S.C. § 1343 (1982).

6. In these circumstances we need not decide whether the Superior Court has concurrent jurisdiction, together with the United States District Court, over a claim filed under the federal RICO statute. *See Lou v. Belzberg,* 834 F.2d 730, 735–739 & n. 3 (9th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988). Even assuming that the Superior Court had jurisdiction, the defendants did not prove a RICO violation.

namely, by multiplying the number of hours reasonably spent by a reasonable hourly fee to reach a "lodestar" figure, which is then adjusted by a variety of factors. *See, e.g., General Federation of Women's Clubs v. Iron Gate Inn, Inc.,* 537 A.2d 1123, 1130 (D.C.1988); *Ungar v. District of Columbia Rental Housing Commission,* 535 A.2d 887, 892 (D.C.1987); *District of Columbia v. Hunt,* 525 A.2d 1015, 1016 (D.C.1987); *see also F.W. Bolgiano & Co., supra,* 333 A.2d at 675 (routine allowance of ten percent attorney's fees for suit on promissory note may not be a reasonable fee award). Before we can rule on the validity of the award, that question must be answered.

We therefore vacate the fee award and remand this case to the trial court, directing it either to recalculate the award using the "lodestar" method or to explain, on the record, how it reached the forty percent figure. Only then can we determine whether the court abused its discretion in computing the amount of attorney's fees. *See General Federation of Women's Clubs v. Iron Gate Inn, Inc., supra,* 537 A.2d at 1129; *Ungar v. District of Columbia Rental Housing Commission, supra,* 535 A.2d at 890; *F.W. Bolgiano & Co., supra,* 333 A.2d at 675. *See generally Johnson v. United States,* 398 A.2d 354, 364–365 (D.C.1979). In either event, the trial court should decide anew whether the provision in the promissory note allowing for reasonable attorney's fees as costs of collection also encompasses the costs incurred by the Bank in defending itself against Stansel and Burleson's counterclaims. *See Kudon v. f.m.e. Corp.,* 547 A.2d 976, 980–981 (D.C.1988); *Ochs v.*

*L'Enfant Trust,* 504 A.2d 1110, 1118–1119 & n. 7 (D.C.1986).[7]

### B

■ Similarly, in the absence of a sufficient record, we cannot determine whether the trial court abused its discretion in denying the Bank's motion for Rule 11 sanctions. Rule 11 provides in pertinent part:

> The signature of an attorney or party [on a pleading, motion, or other paper filed with the court] constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this Rule, the Court, upon motion or upon its own initiative, *shall impose* upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee. [Emphasis added.]

We interpret the rule in the same manner as the United States Court of Appeals read the corresponding federal rule in *Westmoreland v. CBS, Inc.,* 248 U.S.App.D.C. 255, 261–262, 770 F.2d 1168, 1174–1175 (1985).[8] That is, we hold that the trial

---

7. The trial court did rule that the Bank could recover, under the terms of the note, "whatever attorney's fees may have arisen" in defending against the counterclaims. Very recently, in *Kudon v. f.m.e. Corp., supra,* at 980, this court listed four factors to be considered "in determining whether a party requesting an award of attorneys' fees pursuant to a contract provision is entitled to a fee recovery for defending a claim by the party opposing payment of such fees"—the precise situation we have here. Since the *Kudon* decision did not exist at the time the court made its ruling, and since we are remanding the case anyhow for recalculation of the fee

award, we think it would be appropriate for the court to take a fresh look at this issue in light of *Kudon.*

8. Because the Superior Court rule is virtually identical to Fed.R.Civ.P. 11, with only one small difference not relevant here, we may consider federal cases interpreting the federal rule as "persuasive authority in interpreting [the local rule]." *Vale Properties, Ltd. v. Canterbury Tales, Inc.,* 431 A.2d 11, 13 n. 3 (D.C.1981) (citations omitted).

court has broad discretion, in the first instance, to determine whether there has been a violation of the rule by a party or by counsel. Once such a violation is found, however, the court *must* impose "an appropriate sanction" under the rule; it has no discretion to refrain from sanctioning an offending party or attorney.

The trial court issued a one-sentence order denying the Bank's motion for Rule 11 sanctions, without any explanation of its reasons. It is not clear from this order, or from anything else in the record, whether the court recognized that it had any discretion under the rule, whether it was aware of the limits on that discretion imposed by the rule, or whether it purported to exercise its discretion in ruling on the motion. *See Johnson v. United States, supra,* 398 A.2d at 363–364. Thus we cannot determine whether the court's ruling was correct or incorrect. In these circumstances, and considering that not until this opinion have we adopted the reasoning of the *Westmoreland* case in construing Rule 11, we vacate the order and direct the court on remand to reconsider the Rule 11 motion *de novo* in light of *Westmoreland,* and to state on the record its reasons for granting or denying the motion in a manner consistent with *Johnson.*

### IV

The trial court's judgment on the merits of the Bank's claim on the promissory note is hereby affirmed. The post-trial orders awarding the Bank $17,678.26 in attorney's fees and denying the Bank's motion for sanctions under Super.Ct.Civ.R. 11 are vacated, and this case is remanded to the trial court for further proceedings consistent with this opinion.

*Affirmed in part, vacated and remanded in part.*