OFFICE & PROFESSIONAL EMPLOYEES INTERNATIONAL UNION, LOCAL NO. 2, Appellant,

v.

INTERNATIONAL BROTHERHOOD OF PAINTERS & ALLIED TRADES, AFL–CIO–CFL, Appellee.

No. 89–144.

District of Columbia Court of Appeals.

Argued May 24, 1990.
Decided Sept. 14, 1990.

Beth S. Slavet, Washington, D.C., for appellant.

---

David Jonathan Cohen, with whom David S. Barr, Washington, D.C., was on the brief, for appellee.

Before FERREN, BELSON and FARRELL, Associate Judges.

FERREN, Associate Judge:

Defendant-appellant, Office & Professional Employees International Union, Local No. 2 ("OPEIU") appeals the trial court's summary denial of OPEIU's motion for attorney's fees and/or sanctions under Super.Ct.Civ.R. 11. Plaintiff-appellee, International Brotherhood of Painters & Allied Trades, AFL–CIO–CFL ("the Painters Union"), had filed a libel suit against OPEIU in Superior Court. In its answer, OPEIU disclaimed any involvement in the allegedly libelous publication, just as it had done in a letter to the Painters Union before the Painters Union had instituted its suit. Two months after OPEIU filed its answer, the Painters Union moved to dismiss its own suit. In response, OPEIU moved for attorney's fees and/or Rule 11 sanctions. The Painters Union's opposition to that motion indicated that it had not believed OPEIU's initial disclaimer and that it had received "independent information" that OPEIU had indeed issued the allegedly libelous publication. The court dismissed the Painters Union's action without prejudice and summarily denied OPEIU's request for sanctions.

On appeal, OPEIU argues it is entitled to attorney's fees and/or Rule 11 sanctions as a matter of law on any one of three theories: (1) the Painters Union failed to make any factual inquiry; (2) the Painters Union's libel suit was not warranted by existing law or by a good faith argument for the extension of existing law; and (3) the Painters Union interposed the suit for an improper purpose. In light of the Painters Union's failure to disclose in its pleadings or elsewhere—even after OPEIU had moved for Rule 11 sanctions—any inquiry which supported the factual allegations it made in its complaint, we conclude that counsel for the Painters Union violated Rule 11 as a matter of law. Accordingly, we reverse the trial court's denial of appel-

lant's motion and remand the case for a determination of the appropriate sanction.

## I.

This case developed in the context of two separate labor disputes: one between OPEIU and the Painters Union and another between OPEIU and the International Association of Fire Fighters ("IAFF"). OPEIU represents (for collective bargaining purposes) the professional and clerical employees of both the Painters Union and the IAFF.

In late July and early August 1988, the IAFF held its biannual convention. At that time, OPEIU was involved in a labor dispute with the IAFF. On or about August 1, 1988, an unsigned one-page "fact sheet," appearing on OPEIU stationery, was circulated at the IAFF convention. After reciting allegations against various officials of the IAFF, the "fact sheet" stated:

> The above examples represent a serious breach of union ethics and are designed to break our union as ... the Painters' Union is attempting to do.

On August 1, 1988, the president of OPEIU sent the officers of the IAFF a letter disclaiming distribution of the "fact sheet." The letter stated in relevant part:

> I have been informed that a crude, unsigned, one-page flyer using OPEIU Local 2 letterhead has been distributed at the IAFF Convention. THAT LETTERHEAD WAS STOLEN. OPEIU LOCAL 2 HAS DISTRIBUTED NO FLYER AT THE CONVENTION. MOREOVER, THAT FLYER DOES NOT ACCURATELY REFLECT EITHER THE FACTS OR OPEIU'S POSITION.

(capitalization in original.) The letter then stated that OPEIU planned to contact criminal law enforcement authorities about the matter. It also stated that OPEIU would circulate to the convention its actual views in a four-page newsletter, and it requested that the IAFF confiscate all "fraudulent flyers" and not interfere with distribution of any "genuine OPEIU-authorized literature piece." On August 3, 1988, OPEIU

filed a criminal complaint with the Miami Beach Police Department.

On August 5, 1988, officers of the Painters Union sent representatives of OPEIU a letter regarding the "fact sheet." The letter stated that the Painters Union had "been made aware of the libelous leaflets that you have been distributing at the International Association of Fire Fighters, AFL–CIO Convention in Florida regarding the International Brotherhood of Painters and Allied Trades and our dispute in Washington, D.C." (emphasis omitted.) A representative of OPEIU responded in a letter dated August 11, 1988, which stated in relevant part:

> I was perplexed by you[r] reference to "libelous leaflets" that were purported to have been distributed by OPEIU, Local 2 at the International Association of Fire Fighter's Convention in Florida regarding the dispute between Local 2 and the International Brotherhood of Painters and Allied Trades.
>
> The *only* distribution by Local 2 at the IAFF Convention was a newsletter entitled *"Labor's Family"* (see enclosure). I have read this newsletter completely and there is absolutely *no* mention of the International Brotherhood of Painters and Allied Trades or our dispute. I can only assume that your letter is referring to a bogus forgery that was printed on *stolen* Local 2 letterhead. This letter is a fraud. It does not represent Local 2's position or the facts or OPEIU's view of the facts (see letter attached).
>
> Frankly, I was surprised that you would write a letter accusing OPEIU, Local 2 of distributing "libelous" leaflets, of distorting the truth, resorting to false innuendos, and of trying to destroy the relationship between the [Painters Union] and OPEIU, Local 2 until you were sure of the facts. Apparently you were duped by this unsigned forgery as we were.

(emphasis in original.) The letter then informed the Painters Union that OPEIU had contacted the Miami Beach Police Department about the matter.

II.

Because our ruling is premised on the Painters Union's failure to establish in its pleadings or elsewhere that it had conducted a reasonable inquiry before filing its suit, we review and quote from the pleadings in this case in some detail. On September 9, 1988, about one month after receiving OPEIU's letter disclaiming distribution of the "fact sheet," the Painters Union filed a complaint against OPEIU, citing the "fact sheet," alleging libel and asking for $250,000 in compensatory damages and $1,000,000 in punitive damages.

OPEIU filed its answer on October 7, 1988. It stated that the Painters Union "was advised by letter under date of August 11, 1988, that [OPEIU] did not publish the document referred to in ... the complaint...."[1] OPEIU argued that the Painters Union had filed the action "for a purpose of seeking to use the offices of this Court as a weapon in a labor dispute, all of which is a gross and malicious abuse of the processes of this Court, not only in violation of Rule 11, ... but sufficient to have the cause dismissed and to award sanctions against [the Painters Union] and its attorneys."

Two months later, on December 3, 1988, the Painters Union moved to dismiss its action under Super.Ct.Civ.R. 41(a)(2).[2] In

---

1. The answer also argued that, even if OPEIU had published the document, under *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL–CIO v. Austin,* 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974), the statement at issue—made in the context of a labor dispute—was not libelous.

2. Super.Ct.Civ.R. 41(a)(2) provides, in relevant part:

   Except as provided in paragraph (1) of this subdivision of this Rule [permitting dismissal by plaintiff without court order if adverse party has not yet answered or moved for summary judgment or if all adverse parties sign stipulation], an action shall not be dismissed at the plaintiff's instance save upon order of the Court and upon such terms and conditions as the Court deems proper.... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

its memorandum in support of this motion, the Painters Union stated where relevant:

[OPEIU] correctly asserted in its answer that it had written the [Painters Union] under date of August 11, 1988 to deny that it had issued the libelous document. [OPEIU] ignores facts that undercut [OPEIU's] written denial of August 11, 1988. Among other things, the libelous document appeared on its letterhead, and served only its purposes.

The [Painters Union] views [OPEIU's] answer, however, in a different light from [OPEIU's] letter of August 11, 1988. [OPEIU's] answer publicly disavows [OPEIU's] having played a role in issuing the libelous document. It does so under the strictures of Rule 11, and through the good offices of an officer of this Court.

The [Painters Union] filed its complaint with great reluctance, to seek vindication of its reputation in the community of organized labor. [OPEIU's] public disavowal of the libelous document at issue provides a degree of veracity and vindication that its letter of August 11, 1988 did not, and satisfies the [Painters Union] that continuing this litigation against [OPEIU] is unlikely to provide sufficient further vindication to justify the time and expense of litigation.

(paragraph enumeration omitted.)

On December 14, 1988, OPEIU filed a memorandum responding to the Painters Union's motion to dismiss. In the memorandum, OPEIU stated that it was "partially pleased" by the Painters Union's motion but characterized the Painters Union's suit as "totally irresponsible, legally frivolous, and knowingly abusive" and therefore requested an award of attorney's fees as part of any dismissal. OPEIU gave a detailed account of the letters it had sent to both the IAFF and the Painters Union in August, disclaiming any responsibility for the "fact sheet." It alleged that, after receiving OPEIU's letter, the Painters Union had

filed its suit "without any further inquiry or investigation." [3] OPEIU stated:

Thus, [the Painters Union's] filing of this suit, after receiving the documents of August 11, 1988, was grossly irresponsible, improper, and in total bad faith. If some other inquiry had been made of Local 2, or even of the Fire Fighters to inquire if the letter of August 1, 1988, had in fact been sent, or of the Miami Beach police department, where the complaint number and the name of the officer were fully visible and shown on the enclosure, or any kind of further investigation before rushing into court with the complaint in this case, then perhaps at least something could be said in its behalf. But there is nothing. Absolutely nothing.

OPEIU concluded its memorandum by stating that the violation of Rule 11 was "apparent"; it requested an award of attorney's fees, attaching a certificate of counsel that documented the time spent in opposing the libel action.

On December 27, 1988, the Painters Union filed an opposition to OPEIU's request for attorney's fees. In general, it pointed to the circumstances surrounding the circulation of the "fact sheet" and essentially implied that those circumstances amounted to reasonable grounds to believe OPEIU, in fact, had distributed the "fact sheet." It maintained that OPEIU benefitted from the circulation of the "fact sheet" because it had the effect of focusing "the maximum possible attention" on OPEIU's official four-page newsletter, circulated a short time later at the IAFF convention. It also alleged that unless the four-page newsletter had been "planned in coordination with the so-called *FACT SHEET,*'" the newsletter had been produced "[w]ith what would have to have been blinding speed." It further stated that, "despite [OPEIU's] disclaimers," the General Executive Board of the Painters Union had "learned" that OPEIU had circulated the "libelous leaflets" at the IAFF convention. Summariz-

---

3. OPEIU also repeated its argument that under *Austin,* see *supra* note 1, the fact that the statements at issue—made within the context of a labor dispute—were not actionable was "so clear that it is hardly debatable."

ing its grounds for disbelieving OPEIU's disclaimers, the Painters Union stated:

> Given that the so-called *"FACT SHEET"* appeared on [OPEIU's] letterhead, contained information reflecting and advancing [OPEIU's] point of view, and served [OPEIU's] interests in content, timing, and distribution; given that [OPEIU] sought to capitalize on any interest that the so-called *"FACT SHEET"* might arouse with a speed and comprehensiveness—including a typeset four-page newsletter—that was possible only if [OPEIU]'had planned and distributed the *"FACT SHEET";* and given the independent information that the [Painters Union] received, the [Painters Union] did not believe [OPEIU's] denial. This suit followed.

The Painters Union stressed that the fact it wished to drop its suit did not necessarily imply that it now believed OPEIU's denial. It quoted its memorandum in support of its motion for dismissal, stating that OPEIU's disavowal in its answer "provides a degree of veracity and vindication that its letter of August 11, 1988 did not, and satisfies the [Painters Union] that continuing this litigation against [OPEIU] is unlikely to provide sufficient further vindication to justify the time and expense of litigation." [4] (emphasis omitted.) On January 6, 1989, the court dismissed the Painters Union's action and denied OPEIU's request for attorney's fees without a hearing or an explanation.[5] OPEIU filed a timely notice of appeal.

### III.

Rule 11 provides in relevant part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least 1 attorney of record in the attorney's individual name, whose address and telephone num-

ber shall be stated.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief *formed after reasonable inquiry* it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this Rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

Super.Ct.Civ.R. 11 (emphasis added). We review a trial court's decision as to whether or not a Rule 11 violation occurred for an abuse of discretion. *See Stansel v. American Sec. Bank,* 547 A.2d 990, 995–96 (D.C. 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1746, 104 L.Ed.2d 183 (1989); *see also Cooter & Gell v. Hartmarx Corp.,* —— U.S. ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990) (imposing on federal appellate courts an abuse of discretion standard for reviewing all aspects of Rule 11 determination). Because nothing in the court's one-sentence order denying OPEIU's Rule 11 motion, or anything else in the record, indicates, even inferentially, the basis for the court's ruling, we would normally remand the case to the trial court to state on the record the

---

**4.** The Painters Union also argued in its opposition to OPEIU's request for attorney's fees that the libel suit was warranted by existing law. It argued that, even assuming the statements were part of a labor dispute between OPEIU and the Painters Union, the fact that the statements were published to those outside the labor dispute—members of the IAFF—indicated malice and recklessness, bringing the statements outside the protection of *Austin, see supra* note 1. It also claimed that the statement that the Paint-

ers Union was engaged in union busting was factually false, in contrast to the statement at issue in *Austin,* which the court found to be "literally and factually true." 418 U.S. at 283, 94 S.Ct. at 2780.

**5.** In a handwritten sentence added at the end of its typed order, the court wrote: "The Court denies def. request for atty fees."

reasons for its ruling. *See King v. King,* 579 A.2d 659, 665–666 (D.C.1990); *Stansel,* 547 A.2d at 996; *Johnson v. United States,* 398 A.2d 354, 364 (D.C.1979). This case, however, calls for a different disposition.

Most cases involving the reasonableness of an attorney's prefiling inquiry are "rooted in factual determinations" and are therefore properly left to the trial court's sound discretion. *See Cooter & Gell,* 110 S.Ct. at 2459. Upon a review of the record here, however, we conclude that this is one of those rare instances where there are not two permissible views of the evidence.[6] *See Johnson,* 398 A.2d at 364 (facts may leave trial court "with but one option it may choose without abusing its discretion"). The Painters Union has revealed no inquiry on its part that substantiated its factual allegations; accordingly, counsel for the Painters Union violated Rule 11 as a matter of law. The court therefore abused its discretion in denying the Rule 11 motion. *Cf. Westmoreland v. CBS, Inc.,* 248 U.S.App.D.C. 255, 264–65, 770 F.2d 1168, 1177–78 (1985) (concluding trial court erred in finding no Rule 11 violation where appellee's motion had no reasonable basis in law or fact).

Before instituting its libel suit against OPEIU, the Painters Union sent a letter to OPEIU inquiring about the allegedly libelous "fact sheet" circulated at the IAFF convention. OPEIU responded by disclaiming any responsibility for the "fact sheet"; it provided a letter it had previously sent to the IAFF and the case number of a criminal complaint filed with the Miami Beach Police Department to substantiate its disclaimer. Thus, at that point, the result of the Painters Union's only inquiry indicated it had no claim against OPEIU.

Certainly, the Painters Union was not required to believe OPEIU's denial. It was entitled to harbor suspicions that OPEIU had indeed circulated the "fact sheet," based on its perception that OPEIU benefitted from the distribution of the "fact sheet."[7] Under Rule 11, however, suspicions alone are not adequate grounds for a lawsuit; a suit may be filed only "after reasonable inquiry." Super Ct.Civ.R. 11. Whether an attorney's prefiling investigation was reasonable depends on the circumstances of each case. *See Cooter & Gell,* 110 S.Ct. at 2459; *Fred A. Smith Lumber Co. v. Edidin,* 845 F.2d 750, 751 (7th Cir. 1988). On the facts of this case,[8] we believe a reasonable inquiry required that, at the very least, the Painters Union make some inquiry or conduct some investigation which tended to substantiate its suspicion that OPEIU published the "fact sheet" distributed at the IAFF convention.

The only indication in the Painters Union's pleadings that it conducted any inquiry which substantiated its initial suspicion was its allusion to "the independent information" it had received. The Painters Union was under no obligation to reveal the source of this "independent information" initially, *i.e.,* in its complaint or its motion to dismiss. But once it faced a Rule 11 motion based, in part, on a claim that the Painters Union had not conducted a reasonable inquiry before filing suit, it was obliged—if it wished to avoid a sanc-

---

**6.** We note that, as far as we can tell, Judge Murphy ruled on the basis of the pleadings alone. He apparently had no personal contact with the parties or their counsel. There is no chance, therefore, that he considered some other factor, not apparent from the record before us, that led him to deny a Rule 11 sanction.

**7.** It is difficult to understand why the Painters Union also believed that the mere fact OPEIU had already prepared a typeset newsletter to circulate at the IAFF convention was an indication OPEIU must have authored the "fact sheet." The OPEIU newsletter does not mention the "fact sheet" or the Painters Union. Nor does there appear to be anything particularly suspi-

cious in the fact that OPEIU—which at the time was engaged in a labor dispute with the IAFF—had prepared in advance a typeset newsletter to be circulated at the IAFF convention. Thus, the entire basis of the Painters Union's suspicion appears to be its perception that OPEIU benefitted from both the timing and the content of the "fact sheet."

**8.** We note that the Painters Union was under no particular time pressure to file this lawsuit. *See Cooter & Gell,* 110 S.Ct. at 2459 ("An inquiry that is unreasonable when an attorney has months to prepare a complaint may be reasonable when he [or she] has only a few days before the statute of limitations runs.").

tion—to disclose to the court something less vague than the mere assertion it had "independent information" its allegations were true. We conclude that the Painters Union's vague claim that it had "independent information" was not sufficient, as a matter of law, to establish that the Painters Union conducted a reasonable inquiry.

In its memorandum responding to the Painters Union's motion to dismiss, OPEIU suggested several avenues of inquiry the Painters Union might have taken, including contacting officials of either the IAFF or the Miami Beach Police Department. In light of OPEIU's suggestion, the Painters Union's failure to state that it contacted any of these potential sources of information is noticeable. Moreover, the Painters Union's own explanation for dismissing the case suggests another inquiry it should reasonably have made before trial. It states that "[OPEIU's] public disavowal of the libelous document at issue provides a degree of veracity and vindication that its letter of August 11, 1988 did not, and satisfies the [Painters Union] that continuing this litigation against [OPEIU] is unlikely to provide sufficient further vindication to justify the time and expense of litigation." If what the Painters Union sought was a sworn statement disavowing OPEIU's publication of the "fact sheet," it could have requested such a statement from OPEIU. If OPEIU refused such a request, then the Painters Union might have had a reasonable basis to file suit.

Having failed to make any such inquiry or to disclose any specifics of the "independent information" it allegedly received, the Painters Union has made no proffer in its pleadings or elsewhere that would satisfy the requirement of a "reasonable inquiry." We conclude, therefore, that counsel for the Painters Union violated Rule 11 as a matter of law.[9] Accordingly, the trial court's denial of OPEIU's Rule 11 motion is reversed and the case is remanded for a determination of appropriate sanctions. Super.Ct.Civ.R. 11 ("If a pleading, motion, or other paper is signed in violation of this Rule, the Court ... *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction....") (emphasis added).[10]

*So ordered.*

---

9. In light of our disposition, we need not address OPEIU's arguments that the Painters Union's suit was not warranted by existing law or by a good faith argument for the extension of existing law, see *supra* notes 1, 3 & 4, or that the lawsuit was interposed for an improper purpose. Because we decide this case as a matter of law, we necessarily reject OPEIU's contention that the trial court was required to hold a hearing on its Rule 11 motion. *See also Montgomery v. Jimmy's Tire & Auto Center, Inc.*, 566 A.2d 1025, 1031 (D.C.1989) (hearing not required in every Rule 11 case). Finally, we do not address OPEIU's claim, raised for the first time on appeal, that, because the trial court dismissed the Painters Union's complaint without prejudice, it

erred as a matter of law in failing to award fees and expenses.

10. We note that the Supreme Court has recently held that, under FED.R.CIV.P. 11, an award of attorney's fees is limited to expenses incurred at the trial court level, *i.e.*, an award of appellate attorney's fees under Rule 11 is not allowed. *See Cooter & Gell*, 110 S.Ct. at 2461–62. We see no reason not to apply that holding to our own Rule 11. *See Stansel*, 547 A.2d at 995 n. 8 (because Superior Court Rule 11 is "virtually identical to" federal Rule 11 we may consider federal cases interpreting federal rule as persuasive authority in interpreting the local rule).