**Gregory HENSON, Appellant,**

v.

**Clarence PRUE, Appellee.**

No. 99–CV–520.

District of Columbia Court of Appeals.

Argued Nov. 4, 2002.

Decided Nov. 27, 2002.

Matthew A. Anzaldi, Washington, DC, with whom Deborah B. Baum was on the brief, for appellant.

No appearance for appellee.

Before STEADMAN, SCHWELB, and REID, Associate Judges.

SCHWELB, Associate Judge:

Following a bench trial, the trial court ruled that the defendant, Clarence Prue, had wrongfully evicted Gregory Henson by changing the locks to a house at which Henson had rented a room. Declaring that she did not believe Henson's testimony, however, the trial judge assessed Prue's damages at zero. Henson appeals; we conclude that, in light of the trial judge's findings, the judge could permissibly hold that Henson was entitled only to nominal damages. Because a remand for the award of nominal damages would serve no useful purpose, we affirm.

## I.

According to his testimony at the trial, Henson moved into Prue's house at 2113 First Street, N.W., in Washington, D.C., on April 11, 1998. Although the record does not disclose a great deal regarding the nature of the house, one of the other residents, a Mr. Brooks,[1] described it as a "recovery house" at which "everyone in the house, to my understanding, was in recovery" and was "one step from the curb as it is."[2] Henson agreed with this description; he called the residence "a drug house, rehabilitation house." No drugs or alcohol were permitted. Henson paid $275 per month in rent.

The trouble with Henson's tenancy began when the residents learned that Henson, who was forty-six years old at the time of trial, was bringing minors into the house, evidently for inappropriate purposes.[3] Brooks related what happened next:

> After a period of time of asking him to not to bring the kids in, you know, try to obey the house rules a little more, he was asked to leave. We took a vote on letting him, because that's how we do things and we also took a vote on asking him to leave.
>
> And at the time he was asked to leave, he said he had a place to go, but it wasn't ready or something to that nature. So he was allowed 90 days to accumulate his funds and leave. And he agreed to this, verbally he agreed to this.
>
> But, after that time, when the 90 days w[ere] up, he said he didn't have to go [any]where and he didn't. So trying to force the issue, the front door lock was changed. And the next thing I know, we are down here.

On or about December 12, 1998, Henson came home to find that the lock on the front door of the house had been changed and that he could not gain entry to the house. Two days later, Henson filed a handwritten *pro se* complaint alleging that Prue had evicted him without any legal process. Henson demanded judgment in the amount of $999.99. Henson also filed a motion for a temporary restraining order (TRO) and on December 29, 1998, Judge Russell F. Canan granted the motion. The judge ordered Prue to permit Henson

---

**1.** The record does not disclose Mr. Brooks' first name.

**2.** Brooks added that if the residents had not been permitted to stay in the house, they would "probably be in shelters or on the street."

**3.** Brooks testified that "[a] minor would be an understatement. I called them children ...." Henson denied that he brought minors into the house, but the trial judge found his testimony incredible.

914

to enter and occupy the house, to provide Henson with keys, and to "refrain from barring [Henson's] access to the house and apartment without resort to procedures allowable by the law."[4] Following the entry of the TRO, Henson regained possession of his unit.

The case came to trial before Judge Joan Zeldon on February 8, 1999. Henson was represented by counsel; Prue appeared *pro se*. Henson testified that during the eighteen days that he was locked out of the house, he had no access to his personal possessions, merchandise,[5] and medication. Henson claimed that, while he was locked out, he spent most nights at the bus station or "doze[d] off" at the laundromat, and that he could not take a shower or change his clothes. Henson stated that for about four nights he stayed in a hotel, which he was able to do with money provided to him by the man for whom he worked. Henson also asserted that he suffered substantial pain as a result of his inability to take his medication, and he proffered a $150 bill from George Washington University Hospital. Finally, Henson testified that when he regained admission to his unit, some of his jewelry was missing and that there was mildew on some of his clothes. Henson denied that he was renting premises on U Street or had a place to stay there.

At the conclusion of the trial, the judge ruled, as both Judge Canan and Judge Diaz had ruled previously, that Henson's eviction was unlawful:

I greatly respect a house of recovery and I understand full well the importance [of] honesty and obeying rules. When he failed to fulfill your rules and engaged in conduct that did not justify him being allowed to live there, you should have gone to Landlord/Tenant court, filed a complaint for possession.

It could be that you need a lawyer to assist you, it could be that you can do it by yourself, that's really up to you. But, you can't just change the locks.

The judge therefore made the injunction permanent. With respect to damages, however, the judge ruled swiftly and emphatically:

THE COURT: So as for damages, the [c]ourt rules zero.

MR. ANZALDI [Henson's attorney]: Your Honor, might I have an opportunity to summarize?

THE COURT: I heard it. You don't have to argue it. I heard it. I don't find him particularly credible. And, you know, mildew[ed] clothes, you put them in the washing machine, they're clean again, that's not permanent damage. Even if that were true.

I don't see what his damages were. I don't believe that he lived in the streets all that time and never slept. I don't believe it. I didn't find him credible. And that's why I—once I find that he's not credible, he hasn't proved to me what his damages are.

There's no evidence, other than his testimony and he has to prove by a preponderance of the evidence that he was damaged. And that's where the [c]ourt's ruling is. So judgment for Mr. Henson, the injunction is permanent until the landlord engages in lawful procedures to evict him.

Damages I find are zero. I'm sure that's disappointing to the plaintiff, but that's the [c]ourt's best judgment.

4. On January 8, 1999, Judge Rafael Diaz issued a preliminary injunction effectively extending the TRO until the resolution of the suit.

5. Henson testified that he worked as a vendor.

On February 22, 1999, Prue filed a motion to alter or amend the judgment. On March 15, 1999, the judge denied the motion because, "as the court stated on the record, plaintiff's testimony on damages is not credible." This appeal followed.[6]

## II.

More than half a century ago, this court declared that "[i]f there was an unlawful eviction, then the law presumes that some damages followed from this invasion of [the tenant's] right." *Higgins v. Dail,* 61 A.2d 38, 40 (D.C.1948). The court also recognized that a wrongfully evicted tenant is not necessarily limited to compensation for physical injury or property loss, for "[m]any authorities hold that a tenant who has been unlawfully evicted may recover for mental suffering, inconvenience and discomfort." *Id.* at 40 n. 2 (citations omitted). Forty years later, in *Robinson v. Sarisky,* 535 A.2d 901, 905 (D.C.1988), we reiterated the presumption of some damages first announced in *Higgins.* This presumption is consistent with reason and common sense, for in most cases, a tenant who has been denied access to his home and to his belongings for a significant period of time as a result of an unlawful eviction by his landlord is likely to have suffered, at least, inconvenience, discomfort, and some measure of mental suffering. In *Robinson,* the court sustained an award of $4,000 in compensatory damages, although "[t]he only physical damages and out-of-pocket expenditures that [the tenant] proved were his costs of repairing and replacing the locks and doors that were damaged by [the landlord's] activities, together with the cost of various articles of clothing and toiletries which he had to buy after the door to his home was nailed shut." 535 A.2d at 905–06.[7]

As we explicitly recognized in *Higgins,* however, the damages in a particular wrongful eviction case may be "small or even nominal in amount"; this determination must be left to the trier of fact. *Higgins,* 61 A.2d at 40 (emphasis added). In this case, the judge stated in no uncertain terms that she did not believe Henson's testimony regarding his damages.[8] Although some of the damages—separation from his clothes and other belongings—appear to have been undisputed, Henson acknowledged that Prue asked him to come in and gather his property, but he claimed that he had no place to store his effects and that his property would be on the street. Although the judge might have been more specific about what (if any) part of Henson's testimony[9] she credited and what part she did not, we must assume that she did not believe this portion of his account.

---

6. Henson was represented by counsel on appeal. Prue filed no brief in this court and did not participate in the appeal in any way.

7. The court also sustained a jury award of $250,000 in punitive damages.

8. Although the law presumes that some damages follow from a wrongful eviction, the burden of proving the *amount* of such damages remains squarely on the plaintiff. *See, e.g., Robinson, supra,* 535 A.2d at 905 (stating that plaintiff "presented sufficient evidence on which the jury could reasonably base its award of $4,000 in compensatory damages").

9. The judge made no specific finding with respect to two issues that might have been of some importance, namely, whether Henson had access to other housing, as he had earlier told Prue that he would have, and whether he suffered pain and distress as a result of not being able to use his medication. The judge also cut off Henson's attorney somewhat abruptly when he requested an opportunity to argue on the issue of damages, but Henson has not raised this or any other procedural issue on appeal.

■ Moreover, Brooks' testimony, which the judge obviously did believe, established that Henson had agreed to leave voluntarily within ninety days of the residents' vote to ask him to do so, that Henson told Prue that he would have alternative accommodations available by then, but that when the ninety days had elapsed, Henson simply refused to honor his promise to move out. Under these circumstances, an impartial trier of fact could reasonably find that any inconvenience suffered by Henson was largely of his own making, and could therefore fairly award nominal damages only, as contemplated in *Higgins.* We therefore conclude, in light of the trial judge's findings and the presumption recognized in *Higgins* and *Robinson,* that Henson was entitled to an award of some damages, but that the trial judge could properly limit the recovery to nominal damages.

■ Theoretically, we could remand the case to the trial court with directions to award Henson nominal damages. Such a remand would, however, be symbolic only, and where "nominal damages only could be allowed ... the failure to award such damages ... is not a ground for reversal." *Lee v. Dunbar,* 37 A.2d 178, 180 (D.C.1944) (citations omitted). "It is generally recognized that an appellate court will not reverse a judgment merely for the purpose of permitting the recovery of nominal damages." *See* 1 MATTHEW BENDER, DAMAGES IN TORT ACTIONS § 2.40, at 2.49 (2002) (citing authorities). "[I]t is well settled that a failure to award nominal damages is not a sufficient basis for a reversal." *Reese v. Haywood,* 235 Ark. 442, 360 S.W.2d 488,

490 (1962), *overruled on other grounds by Burcham v. Murphy,* 331 Ark. 364, 961 S.W.2d 752 (1998); *accord, Lee v. Bergesen,* 58 Wash.2d 462, 364 P.2d 18, 21 (1961). As the court stated in *Kraisinger v. Liggett,* 3 Kan.App.2d 235, 592 P.2d 477, 480 (1979),

> [W]hile nominal damages are awarded without proof of actual injury, they imply the smallest appreciable quantity ..., with one dollar being the amount frequently awarded. The law, however, does not concern itself with trifles (*de minimis non curat lex*), and a judgment for plaintiff will not be reversed on appeal for a failure to award nominal damages, even though plaintiff is entitled to recover nominal damages as a matter of law.

To the extent, if any, that Henson is entitled to a declaration that his rights have been violated, this has been accomplished by the rulings of three trial judges and by our affirmance of the trial court's judgment, which included a permanent injunction. To remand with directions that Prue pay Henson one dollar or some similar amount, *Kraisinger,* 592 P.2d at 480, would be a waste of resources and would serve no useful purpose. Accordingly, the judgment is

*Affirmed.*[10]

■

---

10. It appears that Prue's premises may have been in the nature of a rooming house, and Henson may have been a roomer rather than a tenant. If he was, then the prohibition against self-help evictions may not have been applicable. *Cf. Harkins v. Win Corp.,* 771 A.2d 1025, 1029 (D.C.2001) (holding that a provider of transient-accommodations may use self-help to evict a non-paying lodger). No party has raised this issue, however, and we do not address it.