Anne S. **WOOD,** Appellant/Cross–
Appellee,

v.

R. Michael **NEUMAN,** et
al., Appellees/Cross–
Appellants.

Nos. 07–CV–578, 07–CV–670.

District of Columbia Court of Appeals.

Argued March 3, 2009.
Decided Aug. 27, 2009.

---

John J. Brennan, III, for appellant/cross-appellee.

John E. Scheuermann, for appellees/cross appellants.

Before WASHINGTON, Chief Judge, and KRAMER and THOMPSON, Associate Judges.

THOMPSON, Associate Judge:

This appeal is the continuation of an at-times acrimonious dispute between neighbors—appellant/cross-appellee Anne Wood, the owner of a unit in the Duddington Manor Condominium ("the Duddington"), and appellees/cross-appellants R. Michael and M. Delia Neuman, owners of a townhouse next door to the condominium building. The dispute arose from their inconsistent views about use of the narrow strip of land that separates their properties, and it escalated into conduct that led to criminal charges and a variety of civil claims and counterclaims. In this appeal, Wood and the Neumans challenge several rulings by the Superior Court in the civil litigation. We affirm the judgments of the Superior Court.

## I. Background

The Neumans have only about 8.4 inches of yard space between the western wall of

their townhouse, which is located at 121 E St., S.E., and their westerly property line. Immediately on the other side of that property line is the lot occupied by the Duddington, whose address is 115–117 E St., S.E. Wood owns condominium unit 102 on the ground floor of the Duddington. As unit owner, Wood has use of an outdoor area—referred to in the record as her "garden" or "patio"—just outside her unit. Wood's garden/patio is about four-and-a-half feet wide and abuts the Neuman's westerly property line. Thus, a plot of land roughly five feet wide separates the parties' dwellings.

In 1999, the Neumans sought to waterproof the westerly wall of their townhouse. To accomplish the work as planned, the Neumans' contractor sought more work space than the 8.4 inches of space in the Neumans' own yard. The Neumans claimed to have an easement for maintenance and repairs that permitted them access to Wood's garden/patio, a claim that Wood disputed. Eventually the Neumans reached an agreement with the Duddington Condominium Board that allowed them access to Wood's garden/patio to perform both the waterproofing work and a drainage project benefitting the Duddington. Wood objected to the resultant damage to her garden and to the Neumans' insistence on maintaining a gateway opening into her garden area. The Neumans complained about Wood's plantings encroaching onto their land. Et cetera.

There followed a number of verbal and physical confrontations between the neighbors. Wood posted signs in her windows disparaging the Neumans. Mr. Neuman dug up Wood's plants. Perching over a fence that had been built between the two lots, Delia Neuman took photos of Wood as Wood dug up paving stones that the Neumans had caused to be laid in her garden area. In response, Wood sprayed Delia

Neuman with water from a garden hose. The Neumans called the police and had Wood arrested for assault.

Finally, the Neumans filed a civil suit seeking compensatory and punitive damages for assault and battery, breach of privacy, stalking and harassment, vandalism and trespass, libel, and nuisance. Wood counterclaimed, alleging trespass, abuse of process, intentional infliction of emotional distress, and interference with contractual relations. Wood also sought a declaratory judgment that the Neumans had no easement with respect to Wood's garden/patio.

After a bench trial on Wood's counterclaim for a declaratory judgment, the Honorable Neal Kravitz ruled that the the Neumans "have no easement for access upon or across the limited common element assigned to Unit 102 of the Duddington Manor Condominium [*i.e.*, the area of Wood's garden/patio] for the purpose of performing repairs or maintenance to their property." The Honorable Jennifer Anderson presided over a jury trial of the parties' other claims. As to some of the parties' claims, Judge Anderson ruled that the evidence was insufficient as a matter of law and withheld the claims from the jury. The jury returned verdicts in favor of the Neumans on their assault and battery, trespass and nuisance claims, but awarded no damages. The jury found in favor of Wood on her trespass and abuse of process claims and awarded compensatory damages totaling $5,000.

## II. The Issues on Appeal

We address the parties' claims of error in turn.

### A. *The Declaratory Judgment*

■ We turn first to the Neumans' argument that Wood lacked standing to seek a declaratory judgment. The Neumans do

not appear to challenge Judge Kravitz's finding that Wood alleged a sufficient injury-in-fact from the Neumans' claimed right of entry into her garden/patio to afford her standing. Instead, their argument is that under District law and the Duddington Condominium instruments, the Duddington Board had authority to grant the Neumans permission to enter onto the "limited common element" assigned to Wood, and that Wood "was required to look to the [C]ondominium"—not to a declaratory judgment action against the Neumans—"for her remedy for any harm or injury to her garden resulting from an easement or agreement made by, or binding upon, the condominium." Accordingly, the Neumans argue, the court erred in "allowing Ms. Wood standing to pursue," and in entertaining, her declaratory judgment counterclaim. This argument is misplaced, because Judge Kravitz explicitly limited his ruling to a determination that the Neumans have no common-law easement of necessity (or other implied easement) that affords them a right to enter into the area of the Duddington's land where Wood has her garden/patio (i.e., a right that would exist irrespective of permission by the Duddington or Wood). Judge Kravitz did not rule on whether the Duddington had authority to give, or validly gave, the Neumans permission to enter onto the land in question (explaining that Wood's counterclaim "was interpreted and understood by all ... not to include the subject of the Neuman[s'] possible agreement with the Condominium Association for some alternative right of access"). Thus, the "standing" issue about which the Neumans complain did not arise.

Nor did Judge Kravitz err in rejecting the Neumans' claim to have an easement of necessity with respect to Wood's garden/patio. The Neumans rely on Section 2.15 of the Restatement (Third) of Property, Servitudes, which states that "[a] con-veyance that would otherwise deprive the land conveyed ... of rights necessary to reasonable enjoyment of the land implies the creation of a servitude...." They argue that "more than eight inches of exterior clearance would be necessary to perform the maintenance and the repairs to the exterior west wall" of their townhouse; that a right of access to Wood's garden/patio area for the limited purpose of performing maintenance and repairs is necessary to the reasonable enjoyment of their own lot; and that "[u]nder these circumstances[,] the law presumes the existence of a servitude that would permit [them] to maintain and repair their property."

Judge Kravitz analyzed the Neumans' claim in a thoughtful and thorough bench ruling in which he considered whether all of the elements of a common-law easement of necessity were satisfied. We need not independently analyze each of the elements ourselves, because we can affirm Judge Kravitz's ruling on the basis of his finding with respect to whether there is a "continuing necessity for the easement sought." *See Douglass v. Lehman,* 66 F.2d 790, 792 (D.C.1933) ("an implied ... grant of an easement can only be said to arise where ... the ... servitude is ... strictly necessary to the enjoyment of the dominant estate"); *Kellogg v. Garcia,* 102 Cal.App.4th 796, 125 Cal.Rptr.2d 817 (2002) ("[a]n easement by way of necessity arises ... when it is established that ... there is a strict necessity for the right-of-way ..."). Judge Kravitz found that the testimony presented was not sufficient "to establish the existence of a strict or absolute necessity" to access the area of Wood's garden/patio because, even though the Neumans' expert testified that he "knew of no other way" that wall maintenance and repairs could be accomplished, "his level of expertise in the relevant areas of engineering was in the Court's view not

compelling;" because the "need" for an easement (in lieu of "making arrange-ments" with neighbors to facilitate repair work) arose from the parties' "simple ina-bility to get along as neighbors in a pro-ductive and cooperative manner;" and be-cause there "appears to be no current need for repairs or maintenance to the Neu-man[s'] wall." As these findings are not clearly erroneous, we defer to them, *see Tauber v. Quan*, 938 A.2d 724, 732 (D.C. 2007), and for that reason affirm Judge Kravitz's ruling that the Neumans have no easement of necessity with respect to the land in issue.

### B. *Failure to Award at Least Nominal Damages*

 The Neumans next argue that the law presumes that "some damages" follow the commission of a tort, and that the failure of the jury to award them any damages on their assault and battery, tres-pass and nuisance claims entitles them to a new trial on damages. We note that the record in this case suggests many reasons why the jury might have determined to award the Neumans zero damages. For example, with respect to the assault and battery charge arising out of Wood's brief-ly spraying Delia Neuman with a water hose, Judge Anderson (properly) instruct-ed the jury that it could mitigate any damages it had computed to the extent it found that Delia Neuman had provoked Wood (by photographing and hectoring her) to such a degree that a reasonably prudent person in Wood's situation would have likewise lost self-control and acted without reflection.[1] The jury could rea-sonably have shared Judge Anderson's

view of the record (which she expressed to counsel outside the jury's presence) that "both parties were really at fault in what occurred here." As to the Neumans' nui-sance and vandalism/trespass claims, these related to, *inter alia*, their claims that Wood "trained her domestic cats to use the garden in [the Neumans'] back patio as a litter box;" that Wood's housemate and co-defendant, Patrick Zamora,[2] flung a glass of red wine into the Neumans' open win-dow, staining an interior wall; and that Wood left "bricks and debris" in the 8.4–inch space abutting the Neumans' town-house. The measure of an owner's recov-ery for damages to real property is the cost of restoration of the property "to the condition it was in prior to the injury" or "where that is impracticable, then the dif-ference between the value of the property before and after the injury is the correct measure." *Wentworth v. Air Line Pilots Ass'n*, 336 A.2d 542, 543 (D.C.1975) (cita-tion omitted). That the jury awarded no damages on the Neumans' claims can rea-sonably be attributed to the fact that the Neumans offered no evidence about the cost of clean-up or the cost of their injured plants, and to Delia Neuman's having ac-knowledged a pre-existing need to paint the inside of the Neumans' townhouse be-cause there was "a lot of deferred mainte-nance on the house."

 However, rather than fully discuss the evidence in mitigation of damages or catalogue the failures of proof of damages as to all components of the Neumans' claims, we can dispose of their argument that they are entitled to a new trial on damages on the basis of two points: first,

---

1. *Cf. Huber v. Teuber*, 3 MacArth. 484, 494 (D.C.1900) ("if the plaintiff himself provoked the assault complained of, ... th[is] circum-stance[] may well be considered as reducing the real amount of the plaintiff's claim for damages") (*abrogated on other grounds* by

*King v. Nixon*, 207 F.2d 41, 93 U.S.App. D.C. 98 (1953)).

2. Zamora, a party in the trial court, has not participated in this appeal.

the Neumans' candid acknowledgment (with which they surely would be confronted at a new trial) that they "could not fairly complain" about a jury award of only nominal damages; and, second, the "well settled [rule] that a failure to award nominal damages is not a sufficient basis for a reversal." *Henson v. Prue*, 810 A.2d 912, 916 (D.C.2002) (citation omitted); *see also* 1 Matthew Bender, DAMAGES IN TORT ACTIONS, § 2.40, at 2.49 (2002) ("It is generally recognized that an appellate court will not reverse a judgment merely for the purpose of permitting the recovery of nominal damages"). "To remand with directions that [Wood] pay [the Neumans] one dollar or some similar amount would be a waste of resources and would serve no useful purpose." *Henson, supra,* 810 A.2d at 916.

## C. *Refusal to Let the Jury Consider Punitive Damages*

The jury awarded Wood compensatory damages on her claims of trespass and abuse of (criminal) process. However, the jury did not consider punitive damages, because Judge Anderson ruled that there was "not enough evidence and not the type of behavior that would justify sending this to the jury on the punitive damages count." Wood argues that Judge Anderson's ruling was error, but we disagree. Punitive damages "are appropriately reserved only for tortious acts which are replete with malice," *Zanville v. Garza*, 561 A.2d 1000, 1002 (D.C.1989); they are properly awarded only "where the act of the defendant is accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury." *Franklin Inv. Co. v. Smith*, 383 A.2d 355, 358 (D.C.1978) (citation omitted). To be entitled to punitive damages, a plaintiff not only must prove by a preponderance of the evidence that the defendant committed a tortious act, but also must prove "by clear and convincing evidence that the act was accompanied by conduct and a state of mind evincing malice or its equivalent." *Croley v. Republican Nat'l Comm.,* 759 A.2d 682, 695 (D.C.2000). Clear and convincing evidence is "evidence that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Cater,* 887 A.2d 1, 24 (D.C.2005) (citations omitted).

Wood argues that the Neumans acted in willful disregard of her rights. However, Judge Anderson found, having "review[ed] every single document that went into evidence," that "it seems pretty clear that the Neumans didn't think that they were impinging upon a right that Ms. Wood had. They believe that the [Duddington Condominium] Board had the ability to give them the authority to access the limited common area." We agree with Judge Anderson's assessment; viewing the evidence in the light most favorable to Wood, *see District of Columbia v. Jackson,* 810 A.2d 388, 396 (D.C.2002), we are satisfied that "no reasonable juror could have found by the 'more stringent' proof requirement of clear and convincing evidence" that the Neumans acted with the malice required to justify punitive damages. *Id.*

Wood argues that evidence of malice was lacking only because the trial court precluded her from introducing such evidence. She cites first Judge Anderson's refusal to admit as evidence Judge Kravitz's December 17, 2003 bench ruling in which he explained his declaratory judgment that the Neumans had no easement of necessity with respect to the area of Wood's garden/patio. We can find no error in this ruling. "A trial judge has discretion to exclude evidence which is

only slightly probative if its introduction would confuse and mislead the jury by focusing its attention on collateral issues...." *Moore v. United States,* 387 A.2d 714, 715 (D.C.1978) (per curiam) (internal citation omitted). Judge Anderson repeatedly expressed to counsel her concern that the slow pacing of their presentations was causing the jury to lose interest and wane in attentiveness. We cannot say that Judge Anderson's refusal to add Judge Kravitz's 40–page ruling to the jury's burden was error.[3] Moreover, the jury was made aware that the Neumans' expert knew of no judicial decision recognizing an easement of necessity for repairs and maintenance. Thus, the 40–page bench ruling essentially was cumulative of information that was before the jury. Additionally, in his ruling, Judge Kravitz made no finding about whether the Neumans had made their claim to an easement in good faith (or, instead, in willful disregard of Wood's right to exclusive use of the garden/patio area), and his lengthy analysis of the easement-of-necessity claim implies that he did not regard the Neumans' claim as frivolous. And, even assuming that Judge Kravitz's bench ruling would have shown the jury that—in Wood's words—an easement such as the Neumans claimed "had never been found anywhere at any time," that would not have been enough to enable a reasonable jury firmly to believe that the Neumans were acting in willful disregard of Wood's rights in asserting their claim to an implied easement. *Cf. Ginsberg v. Granados,* 963 A.2d 1134, 1138 (D.C.2009) ("The mere fact the plaintiff did not prevail before the trial court does not necessarily imply that

its conduct was vexatious or wanton") (internal citation, brackets, and quotation marks omitted). Judge Anderson could reasonably conclude that any probative value the bench ruling had was outweighed by the danger of confusing the jury by diverting their attention to issues not before them.

■■■■ Wood also complains that the court precluded her from introducing into evidence a 1991 letter (which the court excluded on the ground that it pre-dated the parties' dispute) which Wood contends shows that the Neumans "falsely asserted a deed easement" and threatened an escalation of conflict if Wood followed through with a plan to erect translucent screens in her garden. Evidentiary rulings by a trial judge are highly discretionary decisions "that will be upset on appeal only upon a showing of grave abuse." *M. Pierre Equip. Co. v. Griffith Consumers Co.,* 831 A.2d 1036, 1040 (D.C.2003) (citation omitted). We can find no "grave abuse" here. Moreover, exclusion of the letter was almost certainly harmless. The letter details the Neumans' efforts to accommodate Wood's interest in privacy and to avoid any escalation of conflict, efforts that Wood herself acknowledged in her reply letter. Also, the trial transcript contains testimony that, in referring to "easements in our deed," the Neumans may have had in mind a provision in their deed that states that the conveyance was of their townhouse property and "all the easements thereto."[4] Even if the excluded letter's inaccurate reference to "easements in our deed" weighed in favor of a finding that the Neumans had fabricated their claim to an

---

3. In addition, the motions judge, the Honorable Anna Blackburne–Rigsby, had already ruled that Judge Kravitz's (one-page written) order was admissible. We see nothing in the record indicating that Wood sought but was not permitted to introduce the order at trial.

4. The same portion of the transcript and other portions also show that Judge Anderson did not preclude Wood from questioning the Neumans about when they first believed that they had an easement, as Wood now argues.

easement and were acting in disregard of Wood's rights, our assessment is that the countervailing evidence in the record would have precluded the jury from finding by clear and convincing evidence that the Neumans' actions warranted an award of punitive damages.

▮ Another ruling that Wood argues hindered her from proving malice is the court's refusal to permit her to "obtain[ ] and introduce[ ] into evidence" the file of Thomas Mauro, the Neumans' counsel during the bench trial. Wood also complains of a pre-trial ruling by Judge Blackburne–Rigsby that Wood would not be permitted to call Mauro as a witness. Mauro had advised the Duddington Board via a letter that the Neumans had an easement for limited access to the area of Wood's garden/patio to perform maintenance work on their property. Wood sought to examine Mauro, and to introduce his files, to show that his opinion was without foundation, and thus that the Neumans' claim to a right to access Wood's garden/patio was in bad faith. Judge Blackburne–Rigsby explained that "[t]rial counsel may not be called as a witness by the opposing party, and thus made subject to disqualification, unless the opposing party shows a genuine need for the evidence." [5] She found that Wood had not demonstrated a need to call Mauro as a witness, because the testimony she sought to elicit from the Neumans' attorney was available through documents that had been produced during discovery. Wood has not shown us that this ruling was erroneous.

▮ Judge Anderson held that certain materials that Wood sought to intro-

duce were privileged attorney-client communications. But, as Wood correctly notes, "[w]here a party asserts as an essential element of his defense reliance upon the advice of counsel, the party waives the attorney-client privilege with respect to all communications, whether written or oral, to or from counsel concerning the transactions for which counsel's advice was sought." *Wender v. United Servs. Auto. Ass'n,* 434 A.2d 1372, 1374 (D.C.1981) (internal citations, ellipses, and quotation marks omitted). Thus, to the extent that the Neumans cited advice of counsel in defending against Wood's claims, they may have waived any claim of attorney-client privilege and Wood's request to introduce Mauro–Neuman attorney-client communications should not have been denied on the basis of such privilege.[6]

▮ But, even assuming that it was error to exclude the Mauro documents in question, Wood has not demonstrated that her case was harmed by this error. Her brief acknowledges that, in addition to Mauro, another lawyer, Richard Schmitt, wrote an opinion letter to the Duddington Board asserting that the Neumans had an implied easement for maintenance and repair. Judge Anderson similarly observed that the record indicated that "there was legal advice floating out there" from other sources to the effect that the Neumans had a right of some sort with respect to the land in dispute. Those sources included a January 2000 memorandum to the Duddington Board from lawyer Morris Battino (who advised that the Duddington or Wood would likely not prevail if they sought to

5. *O'Neil v. Bergan,* 452 A.2d 337, 344 (D.C. 1982).

6. That does not necessarily mean, however, that Wood was entitled to obtain and introduce Mauro's files. For example, to the extent the files contained attorney work prod-

uct, they enjoyed a protection that is "broader [than attorney-client privilege, because] designed to promote the needs of the adversary system." *Clampitt v. American Univ.,* 957 A.2d 23, 30 n. 8 (D.C.2008).

prevent access by the Neumans).[7] Thus, even if *arguendo* Mauro's documents had enabled Wood to show that Mauro never advised the Neumans with respect to an easement, or advised them that their claim to an easement lacked merit, or advised them without having adequately researched the issue, there was evidence that the Neumans were aware of legal advice from other counsel supporting their easement theory. Thus, even absent a ruling that certain Mauro documents were off-limits because of attorney-client privilege, we are not persuaded that Wood would have been able to show by clear and convincing evidence that the Neumans acted in willful disregard of her rights.[8]

■■■■■ Wood argues in addition that her questioning of the Neumans on the issue of malice was hampered by Judge Anderson's ruling that the Neumans were not necessarily hostile witnesses and therefore could not be asked leading questions during Wood's direct case. This ruling was error. Under Super. Ct. Civ. R. 43(b), "[a] party may call an adverse party . . . and interrogate the witness by leading questions and contradict and impeach the witness in all respects as if the witness had been called by the adverse party." But, having carefully reviewed the portions of the record that Wood cites to support her argument that the court's ruling enabled the Neumans to "evade questions, volunteer non-responsively and volunteer hearsay," and avoid giving "direct answers regarding their abuse of their easement claims," we are unable to discern what testimony Wood believes she was rendered

unable to elicit or what damaging non-responsive answers were permitted. To obtain a reversal, an appellant must show that the erroneous ruling resulted in substantial prejudice to her case. *See Pyne v. Jamaica Nutrition Holdings,* 497 A.2d 118, 126 (D.C.1985). Here, we are unpersuaded that the limitation the court imposed made a difference in Wood's ability to show the malice that was necessary to sustain a claim for punitive damages.

### D. *Abuse of (Civil) Process*

■■■■■ In instructing the jury as to Wood's abuse-of-process claim, Judge Anderson told jurors that they were to consider only the criminal action that the Neumans instigated against Wood. Wood argues that the instruction was erroneous and that she was entitled to have the jury consider as well whether the Neumans committed abuse of process in filing their civil suit against her. We agree with the trial judge that this theory of liability was properly excluded. The tort of abuse of process "lies where the legal system has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Bown v. Hamilton,* 601 A.2d 1074, 1079 (D.C.1992) (citations and internal quotation marks omitted). The fact that a plaintiff has an ulterior motive in filing suit is not enough to sustain a claim for abuse of process if "there [i]s no showing that the process was, in fact, used to accomplish an end not regularly or le-

---

7. It appears that these legal opinions may not have been admitted into evidence, but there was testimony about the Duddington Board having relayed their substance to the Neumans.

8. And—with reference to a point that Wood especially emphasizes—even though the Neu-

mans omitted any claim to an easement when they filed their civil suit, neither alone nor in conjunction with the rest of the record could that fact establish clearly and convincingly that the Neumans' earlier easement claim was made with malice.

gally obtainable." *Id.* at 1080; *see also Morowitz v. Marvel,* 423 A.2d 196, 198–99 (D.C.1980) (explaining that an action against patient for abuse of process did not lie where, in response to a lawsuit by physicians to obtain payment of patient's outstanding debt, the patient filed a malpractice suit with the ulterior motive of coercing a settlement).

Here, Wood's claim was that the Neumans threatened and then filed their civil suit against her in order to force the Duddington Condominium Board to take actions (such as amending its bylaws in a manner favorable to the Neumans and acceding to the Neumans' demands with respect to the disputed land) to avoid a suit against the Duddington itself. Wood emphasizes Delia Neuman's admission that the Neumans filed their civil suit not actually to recover damages, but to "solve these other problems." We agree with Judge Anderson, however, that these facts are not sufficient to support an abuse of (civil) process claim. The leverage that the Neumans apparently sought with respect to the Board was not "without the regular purview of" the civil litigation process and was not "some collateral thing which [the Board] could not legally and regularly be required to do." Quite the contrary, as Wood's counsel argued to the trial court, the Neumans apparently sought to persuade the Board that Wood's actions arising out of the land dispute were "the board's responsibility." In other words, the Neumans sought in part to force the Board to bring its power to bear to resolve the Neumans' dispute with Wood-a dispute in which the Duddington Condominium had a legitimate interest and as to which it at least possibly had prospective liability. Following *Bown* and *Morowitz,* we cannot say that the Neumans' civil suit amounted to abuse of process.

### E. *Intentional Infliction of Emotional Distress*

Wood next challenges Judge Anderson's ruling that the evidence that Wood adduced in support of her claim of intentional infliction of emotional distress did not meet the standard set forth in the case law. "To establish the required degree of outrageousness [to sustain a claim of intentional infliction of emotional distress], the plaintiff must allege conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kerrigan v. Britches of Georgetowne,* 705 A.2d 624, 628 (D.C.1997) (internal citations and quotation marks omitted); *see also Homan v. Goyal,* 711 A.2d 812, 818 (D.C.1998) ("mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not enough to establish liability) (internal citations and quotation marks omitted). To recover, the plaintiff must demonstrate "an intent on the part of the alleged tortfeasor to cause a disturbance in [the plaintiff's] emotional tranquility so acute that harmful physical consequences might result." *Sterling Mirror of Md., Inc. v. Gordon,* 619 A.2d 64, 67 (D.C.1993).

Wood's claim of intentional infliction of emotional distress rests on the "accumulation of acts over a period of time." Even so, reviewing the record *de novo, see Homan, supra,* 711 A.2d at 818, we agree with Judge Anderson that the Neumans' conduct of which she complained was not sufficiently outrageous to support a claim of intentional infliction of emotional distress. The list of incidents that Wood includes in her brief—the Neumans' telling Wood that her garden was their "passageway," creating the appearance of a conflict about building a fence, asserting that they had an easement when

they did not, having their workmen jump over Wood's fence for their convenience, tearing open their fence to maintain a passageway into Wood's yard, stopping Wood's gardener from building a trellis— strikes us as quite underwhelming rather than outrageous. Further, although there was evidence that Wood was "horrified" at Michael Neuman's destruction of her garden, was constantly crying and almost sleepless, was shaken at her arrest, and was embarrassed at having been made out to be a "pariah" in the neighborhood, no evidence was presented to show that Wood's emotional condition was "so acute that harmful physical consequences might result." *Sterling Mirror, supra,* 619 A.2d at 67.

At least at first glance, Wood's allegation about Michael Neuman's having entered Wood's garden with a machete in hand comes close to meeting the outrageousness threshold. However, the evidence at trial about this incident was so contradictory as to fail to meet the test. Although Wood testified at one point that she was certain that Mr. Neuman had a machete, she also testified that what he was carrying was "some cutting tool" which he used to dig up some "little plants" but with which he apparently was unable to cut Wood's camellia plant "because [the plant] was probably too thick." There was no testimony that Mr. Neuman threatened Wood with the "machete" or "cutting tool." [9] Judge Anderson did not err in ruling that the jury would not be

allowed to consider Wood's claim for intentional infliction of emotional distress.

## F. *Nuisance*

Wood argues that the nuisance judgment in favor of the Neumans should be vacated because there is no such tort in the District of Columbia. It is true that, "[a]s an independent tort, claims of nuisance have indeed not been viewed favorably by this court," and that "[i]n recent cases[,] we have even said that 'nuisance is a type of damage and not a theory of recovery in and of itself.'" *District of Columbia v. Beretta, U.S.A., Corp.,* 872 A.2d 633, 646 (D.C.2005) (quoting *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 934 (D.C.1995)).

■■ However, our jurisdiction has on occasion recognized an "actionable private nuisance." *District of Columbia v. Totten,* 5 F.2d 374, 55 App.D.C. 312 (1925); *see also Reese v. Wells,* 73 A.2d 899 (D.C. 1950). To be actionable as a nuisance, the offending thing must be marked by "some degree of permanence" such that the "continuousness or recurrence of the things, facts, or acts which constitute the nuisance," give rise to an "unreasonable use." *Reese,* 73 A.2d at 902. Whereas one fire hazard and one suicide attempt were not nuisances, *id.,* temporarily keeping prisoners unsecurely in a residential neighborhood;[10] repeated instances of indecent exposure in the common areas of a boarding house occupied by several tenants;[11] operation of a brothel over the course of several months;[12] and inadequate maintenance

9. That distinguishes this case from *Tserkonis v. Notis,* No.2003–1546–C, 2003 WL 22700548, 2003 Mass.Super. LEXIS 403 (Mass.Super.Ct. Oct. 27, 2003), a case on which Wood relies. In *Tserkonis,* the defendant was "holding up his hedge clippers and throwing plants in [the] direction" of his neighbors' two children, and also made "intimidating gestures" at the children. *Id.* 2003

WL 22700548, at *2, 2003 Mass.Super. LEXIS 403, at *2–3.

10. *Totten, supra,* 5 F.2d at 374–75.

11. *Levy v. Bryce,* 46 A.2d 765 (D.C.1946).

12. *Raleigh v. United States,* 351 A.2d 510 (D.C.1976).

of a public road abutting a private house, vibrations from which caused the house to crack at the foundation and crumble over time,[13] have all been held to constitute nuisances. In light of this case law—and also because the jury awarded no damages on the claim despite its finding of liability—we decline to conclude that the trial court erred in not dismissing the Neumans' nuisance claim.

## G. *Rule 11 Sanctions*

In her final claim of error, Wood complains that Judge Kravitz denied her motion for litigation sanctions under Super. Ct. Civ. R. 11, and failed to put on the record his reasons for the denial. She seeks a remand for the court "to state its reasons."

Wood has not supplied us with a copy of her motion for sanctions or of the court's order denying the motion (and the "Docket 12" citation she provides for that order is shown on the Superior Court docket sheet as an order denying a motion to dismiss). She implies, however, that she sought sanctions on the grounds that the Neumans' assault and libel claims were barred by the statute of limitations, that there is no private cause of action for stalking and harassment in the District (a point, Wood suggests, the Neumans' implicitly acknowledged when they withdrew the claim after resting their case), that the Neumans' invasion of privacy allegations were insufficient as a matter of law, and that the libel claim was unfounded. Wood adds that, after she had incurred expense in preparing to defend against all the Neumans' claims, the Neumans made no mention of their assault, libel, and invasion of privacy claims at trial.

In support of her remand argument, Wood cites *Office & Prof'l Employees Int'l Union, Local No. 2 v. International Bhd. of Painters & Allied Trades,* 580 A.2d 630 (D.C.1990), in which we observed that where "nothing in the court's ... order denying [a] Rule 11 motion, or anything else in the record, indicates, even inferentially, the basis for the court's ruling, we would normally remand the case to the trial court to state on the record the reasons for its ruling." *Id.* at 634–35. Here, we are not presented with that situation, and we cannot find that Wood is entitled to a remand. Regarding the proffered grounds that existed at the time Judge Kravitz oversaw the case-the Neumans' inclusion in their complaint of claims as to which the limitations period had run and a claim sounding in a tort not (yet) recognized in this jurisdiction, we can infer that Judge Kravitz declined to impose sanctions in recognition that the statute of limitations bar can be waived [14] and that the Neumans were entitled to make good faith arguments for the "extension, modification, or reversal of existing law." Super. Ct. Civ. R. 11(b)(2).

Regarding Wood's assertion that sanctions were warranted because certain of the Neumans' claims were unfounded or were insufficient as a matter of law, Wood has provided us no argument in support of her assertions and no reference to any argument she provided to the trial court. We thus can discern no basis to remand. Finally, with regard to Wood's argument that sanctions were warranted because the

---

**13.** *District of Columbia v. Fowler,* 497 A.2d 456 (D.C.1985).

**14.** In addition, although the parties agreed that the Neumans' claim based on Zamora's having thrown his glass of wine through the Neumans' window was time-barred as an assault claim, it was not time-barred as a trespass claim.

Neumans caused Wood to incur defense costs but made no mention of their assault, libel, and invasion of privacy claims at trial, this claimed basis for sanctions developed *after* Judge Kravitz's ruling, and nothing in the record indicates that Wood ever asked Judge Anderson to consider an award of Rule 11 sanctions. Again, there is no basis to remand for an explanation.

For the foregoing reasons, the judgments of the Superior Court are

*Affirmed.*