# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| B&L CELLULAR, B&R CELLULAR, CELLULAR PLUS OF WATERLOO, INC., INNER-AD, INC., J&J CELCOM, DENNIS P. SHEAHAN, KENNETH L. RAMSEY, and LOWELL E. FERGUSON, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 7628-VCL |
| USCOC OF GREATER IOWA, LLC, as successor in interest to United States Cellular Operating Company of Waterloo, and UNITED STATES CELLULAR CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: December 5, 2014
Date Decided: December 8, 2014

Ronald A. Brown, Jr., Marcus E. Montejo, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, DE; *Attorneys for Plaintiffs B&L Cellular, B&R Cellular, Cellular Plus of Waterloo, Inc., Inner-Ad, Inc., J&J Celcom, Dennis P. Sheahan, Kenneth L. Ramsey, and Lowell E. Ferguson.*

Gregory P. Williams, Lisa A. Schmidt, Thomas A. Uebler, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; *Attorneys for Defendants USCOC of Greater Iowa, LLC and United States Cellular Corporation.*

**LASTER, Vice Chancellor.**

The defendants used their majority control over a partnership to sell its assets to a related party. Upon closing, the partnership dissolved, and its interest holders received their *pro rata* share of the sale price. The plaintiffs proved at trial that the transaction was not entirely fair to the minority. This decision awards them their *pro rata* share of the difference between fair value and the price the partnership received.

## I.   FACTUAL BACKGROUND

Trial took place on September 22, 2014. The following facts were proven by a preponderance of the evidence.

### A.   The Partnership And U.S. Cellular

In 1986, Waterloo/Cedar Falls CellTelCo Partnership (the "Partnership") received a license from the Federal Communications Commission ("FCC") to operate a wireless network in the Waterloo/Cedar Falls, Iowa Metropolitan Statistical Area (the "Waterloo Market"). The Partnership is a general partnership operating under the laws of the District of Columbia. The Partnership was governed by the Amended and Restated Waterloo/Cedar Falls Celltelco Partnership General Partnership Agreement dated November 16, 1990 (the "Partnership Agreement").

Defendant United States Cellular Corporation ("U.S. Cellular") is a publicly traded corporation that provides wireless communication services. In 1987, U.S. Cellular began acquiring interests in the Partnership through an indirect wholly owned subsidiary, defendant USCOC of Greater Iowa, LLC ("U.S. Cellular Sub"). U.S. Cellular Sub eventually acquired a 93.0329% interest in the Partnership. The remaining 6.9671% interest was held by the plaintiffs.

1

The Partnership offered cellular service to the public under the U.S. Cellular brand. In addition to its FCC license, the Partnership owned a network of cellular towers and other equipment that was used to operate a wireless communications network in the Waterloo Market. The Partnership had no employees of its own; it contracted with U.S. Cellular to operate its business and provide a variety other support services including human resources, legal, marketing, customer service, information systems, network engineering, accounting, management, and strategic planning.

**B.     The Asset Sale**

On August 5, 2010, U.S. Cellular gave notice to the plaintiffs that the Partnership was calling a special meeting on August 30. The notice stated that U.S. Cellular would exercise its voting rights at the meeting to cause the Partnership to sell all of its assets to a related party. After that, the Partnership would liquidate, and the partners would receive their *pro rata* share of the cash paid by the related party for the Partnership's assets (the "Transaction"). U.S. Cellular provided the plaintiffs with a report from Bond & Pecaro, a valuation firm, which appraised the Partnership's assets at $68,221,500. U.S. Cellular stated that it would acquire the Partnership's assets for that price.

The plaintiffs objected to the Transaction. Although U.S. Cellular responded to their objections, it did not change the terms. At a special meeting on August 30, 2010, U.S. Cellular voted its interest in favor of the Transaction. The plaintiffs voted against it. The Transaction closed on September 1.

2

## II.    LEGAL ANALYSIS

The plaintiffs advanced three claims at trial. First, they proved that U.S. Cellular Sub technically breached the Partnership Agreement by sharing confidential information belonging to the Partnership with Bond & Pecaro, without formal authorization, but they suffered only nominal damages from this breach. Second, they argued in their pre-trial briefs that that U.S. Cellular Sub breached the Partnership Agreement by competing with the Partnership, but they waived that claim by not presenting evidence on it at trial. Third, they proved that the defendants breached their fiduciary duties by approving a self-dealing transaction that was not entirely fair to the Partnership. The plaintiffs suffered damages in the amount of $2,095,058.

### C.    Breach Of The Confidentiality Provision

The plaintiffs claimed that the defendants violated Section 4.15(b) of the Partnership Agreement when they gave Bond & Pecaro access to information for use in appraising the value of the Partnership's assets. Section 4.15(b) provides that confidential information about the Partnership will "not to be disclosed to third persons except to the extent approved by the Partners by Majority Vote." JX 13. The defendants never obtained a majority vote, although U.S. Cellular easily could have done so.

"The elements for a claim of breach of contract under D.C. law [which governs the Partnership Agreement] are: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Millennium Square Residential Ass'n v. 2200 M St. LLC*, 952 F. Supp. 2d 234, 247 (D.D.C. 2013) (internal quotation marks omitted). The parties do not dispute that the

3

Partnership Agreement was a valid contract giving rise to an obligation not to share certain Partnership information.

The defendants claim that they did not breach the prohibition on sharing confidential information because the provision was aimed at "third parties that could harm the Partnership competitively," not an advisor such as Bond & Pecaro. Dkt. 49 at 12. "Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning." *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012). Where parties intend for confidential information to be available to financial advisors, the contract typically references financial advisors explicitly. *See* Richard Charnov & Helen Curtis, *Confidentiality Agreements: A Very Close Look (Part 1 with Sample Provisions)*, Prac. Law., August 2010, at 46. The Partnership Agreement did not contain any carve-ins or carve-outs. Bond & Pecaro was a "third person" within the meaning of Section 4.15(b), so defendants breached the Partnership Agreement by providing Bond & Pecaro with confidential information.

The plaintiffs sustained only nominal damages from defendants' breach. Nominal damages are appropriate where the plaintiff has not shown proof of actual injury. *Henson v. Prue*, 810 A.2d 912, 916 (D.C. 2002). U.S. Cellular could have used its 93.0329% interest in the Partnership to approve sharing information with Bond & Pecaro. There is no evidence that the plaintiffs would have been able to alter the terms of the Transaction if they had learned that U.S. Cellular had engaged Bond & Pecaro to value the Partnership at an earlier date. The defendants' breach therefore did not cause the plaintiffs quantifiable damages.

4

**D.     Usurpation Of Corporate Opportunity**

In pre-trial briefing, the plaintiffs argued that the defendants usurped a corporate opportunity by acquiring another broadband wireless license in the Waterloo Market through King Street Wireless, L.P., and they proposed to amend their complaint to add such a claim. The plaintiffs never amended the complaint, and they did not present evidence in support of a corporate opportunity claim at trial. The corporate opportunity claim is waived.

**E.     Breach Of Fiduciary Duty**

The plaintiffs proved at trial that the defendants breached their fiduciary duties by approving a self-dealing transaction that was not entirely fair to the Partnership. The District of Columbia has adopted the Uniform Partnership Act, *see* D.C. Code § 29-101 *et. seq.*, which provides that partners owe fiduciary duties of care and loyalty to the partnership and to one another. *Id*. § 29-604.07(a). The description of the duty of loyalty owed by a partner under District of Columbia law is virtually identical to the description of the duty of loyalty owed by a partner under Delaware law. *Compare* D.C. Code § 29-604.07(b), *with* 6 *Del. C.* § 15-404(b). This is unsurprising because both statutes are modeled on the Uniform Partnership Act.

Like Delaware, the District of Columbia uses the business judgment rule as the default standard of review for fiduciary decisions. *See, e.g.*, *Armenian Assembly of Am., Inc. v. Cafesjian*, 772 F. Supp. 2d 20, 104 (D.D.C. 2011) *aff'd*, 758 F.3d 265 (D.C. Cir. 2014). The business judgment rule does not apply if a plaintiff rebuts one of the presumptions in the business judgment rule, such as by showing that the fiduciary "had a

5

personal financial stake" in the matter. *Id.* "Where the business judgment rule does not apply, D.C. courts apply a less deferential standard of reasonableness [under which] a court may have to undertake a potentially wide-ranging, fact-intensive inquiry into both substantive and procedural aspects of a decision." *Id* (internal quotation marks omitted).

District of Columbia law provides that the entire fairness of a transaction is an affirmative defense to claim of self-dealing in the partnership context. D.C. Code §29-604.07(i) ("It is a defense to a claim under subsection (b)(2) of this section and any comparable claim in equity or at common law that the transaction was fair to the partnership."). As the parties invoking the affirmative defense, the defendants bore the burden of proving entire fairness. *See, e.g.*, *May v. Washington, Virginia & Maryland Coach Co.*, 197 A.2d 267, 268 (D.C. 1964). *See also Mayflower Hotel S'holders Protective Comm. v. Mayflower Hotel Corp.*, 193 F.2d 666, 670-71 (D.C. Cir. 1951) ("[W]here a fiduciary obligation is involved . . . the burden rests upon the fiduciaries to establish the entire fairness of the transaction.").

The defendants did not establish any procedural safeguards to ensure a fair transaction. As discussed above, when the defendants shared Partnership information with Bond & Pecaro, they did not obtain the necessary approval from the Partnership, and they did not notify the plaintiffs. The defendants did not appoint an independent representative to negotiate on plaintiffs' behalf, nor did they condition the transaction on a majority-of-the-minority vote. When the plaintiffs objected to the Transaction, the defendants went forward without any modifications. The plaintiffs voted unanimously

against the Transaction. Under the circumstances, the process the defendants followed was not procedurally fair. *See Armenian Assembly*, 772 F. Supp. 2d at 104.

The defendants also did not prove that the Transaction was substantively fair. *See* D.C. Code §29-604.07(i). At trial, both parties introduced expert testimony on the issue of valuation. The defendants relied on Carlyn R. Taylor of FTI Consulting. The plaintiffs relied on Richard H. Pierce of FOCUS LLC. Both used the discounted cash flow method ("DCF") to value the Partnership's assets. Taylor also conducted a comparable companies analysis.

A DCF model is a "standard" approach that can serve as an exclusive valuation method when "used responsibly." *Andaloro v. PFPC Worldwide, Inc.*, 2005 WL 2045640 (Del. Ch. Aug. 19, 2005) (Strine, V.C.). Both DCF models were sufficiently reliable to use as the exclusive method for determining fair value. The experts differed on certain inputs, and by order dated October 20, 2014, the court directed Taylor to modify her model to reflect the court's rulings on which inputs should be used.

The parties agreed on the resulting calculation with one exception. The court ordered that the revised DCF use projected capital expenditures equal to 5.6% of revenue for the years 2016-2020. The parties disagreed as to the appropriate measure for revenues. Taylor used gross revenue; Pierce used revenues on a net intra-company roaming basis. The court previously adopted Pierce's methodology, so the correct approach is capital expenditures calculated as a percentage of revenue on a net intra-company roaming basis.

The resulting valuation of the Partnership's assets is $98,292,235.

**F.** **Remedies**

The revised DCF valuation provided a basis for a sufficiently "responsible estimate of [the] damages" suffered by the plaintiffs. *Del. Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *15 (Del. Ch. Oct. 23, 2002). The plaintiffs were entitled to their *pro rata* share of $98,292,235. They only received their *pro rata* share of $68,221,500. They suffered damages equal to 6.9671% of the difference in value of $30,070,735. The plaintiffs are therefore awarded $2,095,058 plus nominal damages of $1 for the defendants' breach of the Partnership Agreement.

The plaintiffs have asked the court to award them their expenses, including their attorneys' fees. This court has in certain cases "exercised its discretion and concluded that . . . a finding that the transaction was not entirely fair may justify shifting certain of the plaintiffs' attorneys' fees and costs to the defendants who breached their fiduciary duties." *In re Nine Sys. Corp. S'holders Litig.*, 2014 WL 4383127, at *52 (Del. Ch. Sept. 4, 2014). In this case, the court does not believe that fee shifting is warranted.

### III. CONCLUSION

The plaintiffs are awarded damages of $2,095,059 plus pre- and post-judgment interest from September 1, 2010, until the date of payment. Interest is set at the statutory rate, compounded quarterly, taking into account any adjustments in the underlying Federal Discount rate. As the prevailing parties, the plaintiffs are awarded costs. Otherwise, each side will bear its own expenses, including attorneys' fees. The parties will submit a form of Final Judgment implementing this decision.

8